No. 14-3102

In The

# UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

**ROBERT M. BROWN,**
*Plaintiff–Appellant,*

*vs.*

**UNIVERSITY OF KANSAS, et al.,**
*Defendants–Appellees.*

Appeal from the United States District Court for the District of Kansas

Eric F. Melgren, District Judge • Case No. 10-2606

# APPELLANT'S AMENDED PETITION FOR PANEL REHEARING OR REHEARING EN BANC

**JOHN P. GERSTLE II, P.A., KS #07793**

130 N. CHERRY ST, SUITE 103

OLATHE, KS 66061

(913) 780-6666 • FAX (913) 780-6565

*jpgerstle@everestkc.net*

**ATTORNEY FOR PLAINTIFF/APPELLANT**

# TABLE OF CONTENTS

**Page**

STATEMENT PURSUANT TO F.R.A.P. 35(B) .................................................. 1

BACKGROUND .................................................. 1

ARGUMENT .................................................. 2

I.    The Panel Overlooked Plaintiff's Properly Raised Issue and Supporting Argument That Defendants' Actions Towards Brown Created a Legitimate Claim of Entitlement Under Kansas State Law to a Property Right in His Enrollment Contract With the Defendants .................................................. 2

II.    The Panel Overlooked Plaintiff's Properly Raised Issue and Supporting Argument that Creation and Publication of Governing Rules and Regulations by a Kansas State Agency and Its Constitutionally Appointed Governing Authority Gave Brown a Legitimate Claim of Entitlement to a State Created Liberty Interest to the Protections Embodied Within Those Rules And Regulations .................................................. 7

III.    The Panel's Decision Regarding the Issues of Brown's State Law Created Property and Liberty Interests is Either in Conflict with Supreme Court and Circuit Precedent, or It is Misleading .................................................. 12

IV.    The Panel Misconstrued Key Facts Surrounding the Terms of Brown's Application Letter, and Improperly Denied Consideration of Brown's Statements of Fact and State Claims Based Upon this Misconstruction .................................................. 13

V.    The Panel Opinion Should Be Vacated .................................................. 15

i

# TABLE OF AUTHORITIES

Page

## Federal Cases

Board of Regents v. Roth
    408 U.S. 564 (1972) ....................................................... 1, 2, 13

Perry v. Sindermann
    408 U.S. 593 (1972) ....................................................... 1, 3, 6

Montero v. Meyer
    13 F.3d 1444 (10th Cir. 1994) ...................................... 1, 7, 13

Regents of Univ. of Mich. v. Ewing
    408 U.S. 593 (1972) ....................................................... 12

Hicks v. Oklahoma
    447 U.S. 343 (1980) ....................................................... 13

## State Cases

Morse v. Kogle
    162 Kan. 558 (Kan. 1947) .............................................. 2, 3

Havens v. Safeway Stores
    678 P.2d 625 (Kan. 1984) .............................................. 3, 6

Schiffelbein v. Sisters of Charity Leavenworth
    190 Kan. 278 (Kan. 1962) .............................................. 2, 4

Murphy v. Nelson
    921 P.2d 1225 (Kan. 1996) ............................................ 8, 11

Nordstrom v. Miller
    227 Kan. 59 (1980) ........................................................ 14

# TABLE OF AUTHORITIES

## Rules

Fed. R. App. P. 35(b) ................................................................. 1

Fed. R. App. P. 35(a)(1) ............................................................ 1

10 Cir. R. 35.1(A) ..................................................................... 1

## Miscellaneous

Restatement (Second) of Contracts § 90(1) ............................... 3

Restatement (Second) of Contracts § 287(2) (1981) ................. 4

Kansas Constitution, Article 6, Section 2(b) ............................ 7

## Statement of related cases (10th Cir. R. 28.2(C)(1))

None

Appellant, pursuant to Fed. R. App. P. 35 and 40, respectfully submits this Amended Petition for Panel Rehearing or Rehearing En Banc seeking review of this Court's opinion in Brown v. University of Kansas, et al., Case No. 14-3102 (10th Cir. Jan. 13, 2015)(Unpublished)("the Panel Opinion")

## STATEMENT PURSUANT TO F.R.A.P. 35(b)

1.      Pursuant to Fed. R. App. P. 35(b), the undersigned expresses a belief, based on reasoned judgment, that the panel's unpublished opinion appears to conflict with the Supreme Court's Decisions in *Board of Regents v. Roth*, 408 U.S. 564 (1972); *Perry v. Sindermann*, 408 U.S. 593 (1972);  and controlling Tenth Circuit precedent in *Montero v. Meyer*, 13 F.3d 1444 (10th Cir. 1994)

2.      Pursuant to Fed. R. App. P. 35(b), the undersigned expresses a belief, based on reasoned judgment that this Court's unpublished opinion involves two questions of exceptional importance: (A) May state administrators disregard legitimate entitlements created by State law?; and (B) In cases regarding legitimate entitlements created by state law, are students entitled to the specific protections of the laws which create the entitlements?

Rehearing is therefore necessary to secure or maintain uniformity of this Court's decisions.  Fed. R. App. P. 35(a)(1); 10th Cir. R. 35.1(A)

## BACKGROUND

This case stems from the permanent disciplinary expulsion of plaintiff

Robert Brown from The University of Kansas School of Law.    The facts will be repeated only as necessary to clarify the issues.

## ARGUMENT

I.    **The Panel Overlooked Plaintiff's Properly Raised Issue and Argument Regarding His State Law Property Right in His Enrollment Contract With the Defendants**

Brown has argued that actions which defendants undertook freely and of their own accord recognizing Brown's enrollment contract and inducing him to suppose that his enrollment contract was recognized, after defendants had received Brown's amended application and with full knowledge of their rights and of all the material facts, gave Brown a legitimate claim of entitlement under Kansas common law to a property interest in his enrollment contract based on his amended application, and that defendants' right to rescind, while once valid, had been removed by *Morse v. Kogle*, 162 Kan. 558, Syl. at 1-3 (1947) and *Schiffelbein v. Sisters of Charity of Leavenworth*, 190 Kan. 278, 281-2 (1962) at the time of his dismissal.    Neither Defendants, the District Court, nor this Court's Panel have addressed this issue.

> It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims. Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law— rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. (*Board of Regents v. Roth*, 408 U.S. 564, 577 (1972))

2

Property rights may also arise from contract law, and "absence of [] an explicit contractual provision may not always foreclose the possibility [of] a "property" interest[]. [A]greements, though not formalized in writing, may be implied. Explicit contractual provisions may be supplemented by other agreements implied from the promisor's words and conduct in the light of the surrounding circumstances." *Perry v. Sindermann*, 408 U.S. 593, 601-02 (1972) (Citations and punctuation omitted)

In Kansas, One who claims fraud in a contract process must act quickly after discovery of the alleged fraud.

1. One who seeks to rescind a contract on the grounds of fraud must do so with reasonable promptness after discovery of the fraud.
2. If, after discovery or knowledge of facts which would entitle a party to a contract to rescind the contract, he treats the contract as binding and leads the other party to believe that the contract is still in effect, he will have waived his right to rescind.
3. In order to constitute such a waiver, it is not necessary that there be an express ratification of the contract after discovery of the fraud which might make the equitable remedy of rescission available. Acts or conduct inconsistent with an intention to rescind it, or in recognition of the contract, may have the effect of affirming it. ( *Morse v. Kogle*, 162 Kan. 558, Syl. at 1-3 (1947))

When an agreement is not an integrated agreement, an organization's published Rules, Regulations, and other literature and custom can be used in Kansas to help determine the intent and extent of the contract. *Havens v. Safeway Stores*, 678 P.2d 625, 629 (Kan. 1984) *See* also Second Restatement of Contracts § 90(1)

In Kansas, a party to a contract claiming to have been defrauded may not

continue to benefit under the contract, or induce the other party to the contract to believe that it is still in force. Doing so constitutes acquiescence in the contract.

> Whether the principle is described as equitable estoppel, quasi estoppel, waiver, ratification, election, or as a requirement of consistency in conduct, is not very important. The doctrine of equitable estoppel is frequently applied to transactions in which it is found that it would be unconscionable to permit a person to maintain a position inconsistent with one in which he has acquiesced .... The rule is well recognized that where a party with full knowledge, or with sufficient notice or means of knowledge, of his rights and of all the material facts remains inactive for a considerable time or abstains from impeaching a contract or transaction, or freely does what amounts to a recognition thereof as existing, or acts in a manner inconsistent with its repudiation and so as to affect or interfere with the relation and situation of the parties, so that the other party is induced to suppose that it is recognized, this amounts to acquiescence and the transaction, although originally impeachable, becomes unimpeachable. (*Schiffelbein v. Sisters of Charity of Leavenworth*, 190 Kan. 278, 281-2 (1962))

> If a party, knowing of an alteration that discharges his duty, asserts a right under the original contract or otherwise manifests a willingness to remain subject to the original contract or to forgive the alteration, the original contract is revived. (Second Restatement of Contracts § 287(2))

Brown amended his application within 7 days of beginning matriculation. Brown's last contact with Defendants regarding the information in his amended application was on October 7, 2009. Subsequently, Brown was allowed to sit for his finals and received grades in all his courses. Brown was automatically enrolled for the Spring 2010 semester and his tuition for that semester automatically collected from a student loan by defendant Rohleder-Sook's office without the requirement of so much as a mouse click on Brown's part. During this time frame, Brown was never

given any indication that his status as a student was in jeopardy, or that his removal was being sought until his February 23rd, 2010 meeting with defendant Mazza. (RII, *Exhibits in Support*, docket number 167, Attachment #10, EX K, Page 3-4, ¶¶ 16-17.)

Brown's August 27, 2009 amendment came 50 days before the October 15, 2009 due date of tuition for the fall 2009 Semester. This would be a much different case if the school of law had simply cancelled Brown's enrollment at the time he amended, and Defendants had ample time to do so. Instead, they allowed Brown to continue to devote his full productive effort to matriculation at the school of law for two complete semesters and half of the summer session, and even enrolled him for the Fall of 2010. During this time, both his Fall 2009 and his Spring 2010 tuition along with related fees for each semester totaling $15,883.84 were collected and permanently retained by Defendants. Brown incurred Student loan debt in excess of $20,000 during this timeframe. (RI, *Pretrial Order*, docket number 144, at 39.)

When Defendants allowed Brown to sit for finals in the Fall of 2009 and re-enrolled Brown for the Spring of 2010, they did so with full knowledge of every fact they later claimed as a subsequent ground for dismissal. Defendants accepted Brown's amended application. They collected significant consideration (in excess of $15,000) with no offer for refund. With full knowledge of their right to simply rescind and void Brown's enrollment, Defendants remained inactive for a considerable time during which they abstained from impeaching the transaction.

Defendants' re-enrollment of Brown and their issuance of grades to him were both consistent with recognition of his enrollment contract and were inconsistent with its repudiation, and they induced Brown to suppose that his amended application had been accepted. This constituted acquiescence in the contract by Defendants, and the contract, although originally impeachable, became unimpeachable. Brown's enrollment contract based on his amended application created a legitimate claim of entitlement to the protections of Kansas common law and the benefits of that contract. *Perry v. Sindermann*, 408 U.S. 593, 601-02 (1972). The nuances of Brown's enrollment contract with the University of Kansas were explained by the University's policies, procedures and regulations. *Havens v. Safeway Stores*, 678 P.2d 625, 629 (Kan. 1984).

The appropriate relief, if the state law contract interest is to be protected, is reinstatement of the contract and protection of Brown's property interest in the contract. Since Defendants were aware of every alleged wrong upon which they based Brown's dismissal at the time they acquiesced in the enrollment contract, they cannot now claim that more due process or a hearing would resolve the issue. Brown's amended application has been accepted. To the extent the University's policies and procedures provide for further due process, they are superseded by Kansas common law of contracts. (RIII, *Exhibits in Support*, docket number 168, Attachment #6, EX R, Page 15, § 6.1.6 - ("The provisions of these procedures shall be superseded by any

contrary provision of state or federal law."))  Brown should be allowed to resume matriculation at the University of Kansas School of Law with full credit for all past courses.  Any continued or new disciplinary action should be based upon circumstances not known at the time of Brown's re-enrollment and the collection and permanent retention of his tuition.

## II.  The Panel Overlooked Plaintiff's Properly Raised Issue and Argument Regarding His State Created Liberty Interest

"[A] state creates a protected liberty interest by placing substantive limitations on official discretion.  These substantive limitations work to create the legitimate claim of entitlement giving rise to a constitutional right."  *Montero v. Meyer*, 13 F.3d 1444, 1448 (10th Cir. 1994)(Citations and punctuation omitted)

The Kansas Board of Regents is a constitutional, rather than legislative creation, and is the state's definitive source of supervision and control of state universities.

> The legislature shall provide for a state board of regents and for its control and supervision of public institutions of higher education. Public institutions of higher education shall include universities and colleges granting baccalaureate or postbaccalaureate degrees and such other institutions and educational interests as may be provided by law. The state board of regents shall perform such other duties as may be prescribed by law. (Kansas Constitution, Article 6, Section 2(b))

On March 20, 1969, the Kansas Board of Regents approved the University Senate Code of the University of Kansas, chartered all the appropriate governing bodies listed therein, and decreed that the University Senate Code and its supporting

regulations would serve as the University's official rules and regulations. (RIII, *Exhibits in Support*, docket number 168, Attachment #5, EX Q, Page 3, Preamble)

In Kansas, "an administrative agency may not violate or ignore its own rules, and where it fails to follow the rules which it has promulgated, its orders are unlawful." *Murphy v. Nelson*, 260 Kan. 589, 595, 921 P. 2d 1225 (1996)(Citations Omitted)

The School of Law's duties in this case were very clearly defined within the University Senate Code, the University Senate Rules and Regulations, and the Student Code of Rights and Responsibilities, and they were mandatory, not optional for the defendants in this case.

Brown stood accused of (and was ultimately dismissed for) "falsification, misrepresentation, and failure to supply required information on [his] application to the School of Law." That transgression is described in Article 22(C) of the Code of Student Rights and Responsibilities, which states "An offense against the orderly process of the university is committed when [a] student or applicant knowingly furnishes false or misleading information to the University." (RIII, Docket# 168, Exhibits in Support, Attach #: 3, EX O - Mazza Dep Ex 3 - Code of Student Rights and Responsibilities, Art. 22 (C)(2)) In summary, Brown was charged with an offense described as a type of non-academic misconduct within the Code of Student Rights and Responsibilities.

Such disputes fall under the jurisdiction of the Vice Provost for Student

Success, and are administered pursuant to the procedures of the Office of the Vice Provost for Student Success. ((RIII, Docket# 168, Exhibits in Support, Attach #: 6, EX R - Mazza Dep Ex 7 - University Senate Rules and Regs, Section 6.4.9.1)

Article 22 (F)(1) of the Code of Student Rights and Responsibilities provides that "[a] student or organization alleged to have violated provisions of Article 22 is entitled to a hearing in accordance with procedures established by the Office of the Vice Provost for Student Success. Any appeal from such a hearing shall be directed to the University Judicial Board." (RIII, *Exhibits in Support*, docket number 168, Attachment #3, EX O, Code of Student Rights and Responsibilities, Art. 22 (F)(1)).

Upon learning of Brown's transgressions, then, the School of Law, if it was to take disciplinary action, was *required by law* to file its complaint with the Office of the Vice Provost for Student Success, which retained exclusive jurisdiction.

University Senate Code, Art. XIV, Section 2 provides procedural due process guarantees for <u>every member</u> of the University Community who is involved in a grievance or dispute. (RIII, *Exhibits in Support*, docket number 168, Attachment #5, EX Q, University Senate Code, Art. XIV, Section 2)(Emphasis Added). Those rights include: a) A hearing before a disinterested panel; b) representation by counsel; c) the right to a written statement of the complaint setting forth with particularity the provisions of the University Rules and Regulations alleged to have been violated; e) the right to introduce into evidence all relevant testimony and documents, and to a

full examination of the evidence presented by the other parties, including the opportunity to cross-examine witnesses; f) a decision based upon the record of the hearing or appeal; i) Where the procedures provide for an appeal beyond the hearing, a party aggrieved by a decision of the hearing body shall be entitled to appeal in accordance with such procedures; j) the benefit of the burden of proof before a disinterested hearing panel.

USC Art. XIV protections extend to procedures within every jurisdiction of the University. The Student Code of Rights and Responsibilities also affords specific procedural limitations regarding how the University may proceed whenever a student's status is placed in jeopardy for non-academic reasons:

> Article 2(E). Students will be exempt from disciplinary action that affects their status as students except for academic failure or violation of a published Student Senate, University Senate, University or Regents rule or regulation. Rules and regulations shall be fully and clearly disclosed in advance of the supposed violations.
>
> Article 2(F). No disciplinary sanctions resulting from a violation of rules and regulations, under Article 2(E), may be imposed upon any student without prior written notice of the nature and cause of the charges, and an opportunity to be heard at a fair hearing. A fair hearing shall include confrontation of witnesses against him or her and the assistance of a person of his or her own assistance or with the prior approval of the Office of the Vice Provost for Student Success, up to three persons of the student's choosing.
>
> (RIII, Docket# 168, *Exhibits in Support*, Attach #: 3, EX O - Code of Student Rights and Responsibilities, Articles 2(E) – 2(F))
>
> The limitations of the University's Rules and Regulations created a legitimate

claim of entitlement for Brown in his liberty interest in the due process protections those regulations afford. The University of Kansas admits it is a State Agency. (RI, *Pretrial Order*, docket number 144, at 3, SF ¶2.)(UNCONTROVERTED) When a Kansas State Agency violates its own rules, it violates the law. *Murphy v. Nelson*, 260 Kan. 589, 595, 921 P. 2d 1225 (1996)

The Kansas Board of Regents has decreed via its constitutionally given power that the University Senate Code and its supporting regulations shall govern the University of Kansas. The University Senate Code and its supporting regulations are publicly available, as is *Murphy v. Nelson.* They give rise to legitimate claims of entitlement by placing sharp limits and restrictions on official discretion in situations involving removal of a student for non-academic reasons. Kansas has created a liberty interest through its laws.

To hold otherwise would perpetrate a fraud of sorts on every citizen of Kansas who places reliance on these administrative regulations, Kansas common law, the Kansas Supreme Court, and the Kansas Board of Regents. The Panel Opinion places the administrative staff of the University of Kansas above the law. This issue was overlooked by the Court below. The appropriate relief, if the state law liberty interest is to be protected, is access to a proper hearing within the office of the Vice Provost for Student Success, accompanied by all the protections required by Regents Rules and Regulations and Kansas Common Law as it pertains to state agencies.

## III.  The Panel's Decision is Either in Conflict with Supreme Court and Circuit Precedent, or It is Misleading

The Panel Opinion disregards the specifics of the entitlements created by state law. (See the Panel Opinion at 7 - "In this case, we will assume Mr. Brown had liberty or property interests implicated by his dismissal from the law school.")  The ruling effectively negates the concept of federal entitlements which can be created by way of state law in terms of student Constitutional rights, or at the very least leaves the existence of those federal claims of entitlement to the whim of state administrators with no regard for what the state law requires.  There is no explanation contained in the Panel Opinion by which one might determine the reasoning behind or the reach of the Panel's opinion.

The Supreme Court has dealt with this issue differently than has the Panel in this case.  The issue that is raised here by Brown regarding preservation of student status by way of contract law was addressed by the Supreme Court in *Regents of Univ. of Mich. v. Ewing*, 474 US 214 (1985).  In *Ewing*, the Court accepted the District Court's finding that Ewing lacked a tenable estoppel claim under Michigan law, noting that no party had challenged that ruling during the appeals process. *Ewing*, 474 US at 223-24. But the *Ewing* court did suggest that had the promissory estoppel claim been properly preserved, it could have served as the basis for an entitlement which called for a remedy much more specific than the general interest against arbitrary dismissal which was then before the Court. *See Id* at 223-24.

12

Similarly, attempts to simply ignore entitlements in the form of state created liberty interests have met with a much different result in the high Court.  (*See Hicks v. Oklahoma*, 447 US 343, 346 (1980) – Holding that a defendant with  a state created liberty interest "has a substantial and legitimate expectation that he will be deprived of his liberty only to the extent [allowed by state law], and that liberty interest is one that the Fourteenth Amendment preserves against arbitrary deprivation by the State.")

As it now stands, the Panel Opinion amounts to a finding that no matter what state created property or liberty interest exists in a case of expulsion from a state university, it is subsumed within the broader and still not formally decided question of whether a student has a general due process right to continued enrollment in a state university and provides only the absolute minimum processes necessary before dismissal regardless of the state law.  The panel's unreasoned decision on this issue renders the due process entitlements which were made doctrinal in American jurisprudence by *Board of Regents of State Colleges v. Roth* meaningless and irrelevant in certain cases.  The Panel's decision also overrules *Montero,* 13 F.3d at 1448.

IV.     **The Panel Misconstrued Key Facts Surrounding the Terms of Brown's Application Letter, and Improperly Denied Consideration of Brown's Statements of Fact and State Claims Based Upon this Misconstruction**

The panel states, with no support in the record, that "Mr. Brown's

application and certification letter acknowledged that he could be <u>expelled</u> for falsifying, misrepresenting, or failing to supply required information." (Panel Opinion at 4)(Empahsis Added)  But such an acknowledgment appears nowhere in the stipulated facts.  While everyone agrees defendants had a right to *rescind*, it is equally clear they failed to do so.  The effect of Kansas Law in the aftermath of that failure is dealt with above.

The remedy for rescission is to restore the parties to their former positions prior to entering into the contract.  *Nordstrom v. Miller*, 227 Kan. 59, 69 (1980) Conversely, the consequence of permanent expulsion for Brown resulted in the loss of more than $15,000 in tuition, incurrence of $20,000 in student debt Brown is still struggling to repay, and permanent exclusion from the American legal profession.

The Panel has used this "right to expel" to dismiss the remainder of Brown's facts as meaningless.  (Panel Opinion at 8 – "Any benefits [of consideration of additional facts or process] would have been minimal in light of the undisputed facts.  These facts include Mr. Brown's acknowledgment that he could be <u>expelled</u> for falsifying his application [.]" (Emphasis Added)).

Brown is entitled to reconsideration of his legitimate entitlements under state law and his pendent state claims based upon his statements of fact viewed in the light most favorable to him.  Instead, each of Brown's 321 staements of fact were ignored based upon this premise.

## V.     The Panel Opinion Should Be Vacated

The Panel has overlooked entirely arguments that are foundational to Brown's appeal.  In so doing, the Panel has applied the laws in a manner inconsistent with Constitutional entitlement jurisprudence as established by the Supreme Court, and has established potential precedent for relegation of issues of state law to the unfettered discretion of state administrative decision makers.  For these reasons, and for those stated above, Panel opinion should be vacated.

Should the Panel refuse to take any actions, however, the Plaintiff asks the Court to accept this case for en banc rehearing.  The issues presented here are of national importance.  If this court truly wishes to make drastic reforms in federal constitutional entitlements which arise from state law, the entire Court should do so.

## CONCLUSION

For the foregoing reasons and based upon the foregoing authorities, Plaintiff/Appellant prays that this Court reconsider its holdings in Brown v. University of Kansas, et al., Case No. 14-3102 (10th Cir. Jan. 13, 2015)(Unpublished)

RESPECTFULLY SUBMITTED this 19th day of February, 2015.

s/ John P. Gerstle II
_____
JOHN P. GERSTLE II, P.A., KS #07793
ATTORNEY FOR PLAINTIFF/APPELLANT
Counsel of Record

## CERTIFICATION OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 35(b)(2)(B) because:

:             this brief does not exceed 15 pages, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii)

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

:             this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14-point font using the Times New Roman type style

By:
s/ John P. Gerstle II
_____
John P. Gerstle II, P.A.
Attorney for Plaintiff/Appellant
Dated: February 19, 2015

**CERTIFICATE OF DIGITAL SUBMISSION**

In accordance with the court's CM/ECF User's Manual, I hereby certify that all required privacy redactions have been made. In addition, I certify that the hard copies of this pleading that may be required to be submitted to the court are exact copies of the ECF filing, and the ECF submission has been scanned for viruses with the most recent version of a commercial virus scanning program (BitDefender Total Security, Version 17.28.0.1191, updated 02/18/2015) and, according to the program, is free of viruses.

 s/ John P. Gerstle II

_____

JOHN P. GERSTLE II, P.A., KS #07793
ATTORNEY FOR PLAINTIFF/APPELLANT
Counsel of Record
Dated: February 19, 2015

## PROOF OF SERVICE

I, **John P Gerstle II, P.A.**, declare as follows:

I am the Attorney for the Plaintiff/Appellant in 10th Circuit Court of Appeals Case No. 14-3102. On **February 19, 2015**, I served the within document entitled:

## APPELLANT'S AMENDED PETITION FOR PANEL REHEARING OR REHEARING EN BANC

on the parties in the action by placing a true copy thereof addressed as follows and delivering in the below-stated manner:

<u>Parties Served:</u>

## SEE ATTACHED MAILING LIST

[/] (BY ECF ELECTRONIC SERVICE) by filing through ECF which will cause a true copy thereof to be furnished through (ECF) electronic service as indicated on the attached service list.

[/] (BY MAIL) by placing a true copy thereof in an envelope addressed as indicated on the attached service list.

[/] (BY MAIL) by placing 12 hard copies in the U.S. Mail to the Clerk of this Court concurrently with Electronic Filing pursuant to 10th Cir. R. 35.4

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed in Olathe, KS.

s/ John P. Gerstle II
_____
John P. Gerstle II, P.A.
Attorney for Plaintiff/Appellant

**MAILING LIST FOR PROOF OF SERICE**
(Brown v. University of Kansas et. al.)
(Tenth Circuit Case No: 14-3102)

| PARTY / INDIVIDUAL SERVED | PARTY REPRESENTED / CAPACITY |
|---|---|
| Sarah L. Trower<br>245 Strong Hall<br>1450 Jayhawk Blvd.<br>Lawrence, KS 66045<br>785-864-3276<br>strower@ku.edu | All Defendants<br><br>2 COPIES BY U.S. MAIL<br><br>VIA ECF ELECTRONIC SERVICE |

FILED
United States Court of Appeals
Tenth Circuit

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

January 13, 2015

Elisabeth A. Shumaker
Clerk of Court

ROBERT M. BROWN,

      Plaintiff - Appellant,

v.

UNIVERSITY OF KANSAS;
STEPHEN W. MAZZA, individually
and in his official capacity as
Interim Dean of the University of
Kansas School of Law; JOYCE A.
MCCRAY-PEARSON; GAIL B.
AGRAWAL; WENDY ROHLEDER-
SOOK; ANDY TOMPKINS, in his
official capacity as President of the
Kansas Board of Regents; GARY
SHERRER, in his official capacity
as Chair of the Kansas Board of
Regents; ED MCKECHNIE, in his
official capacity as Vice Chair of
the Kansas Board of Regents;
JAROLD BOETTCHER, in his
official capacity as a member of the
Kansas Board of Regents;
CHRISTINE DOWNEY-SCHMIDT,
in her official capacity as a member
of the Kansas Board of Regents;
MILDRED EDWARDSIN, in her
official capacity as a member of the
Kansas Board of Regents; TIM
EMERT, Chairman, in his official
capacity as a member of the Kansas
Board of Regents; RICHARD
HEDGES, in his official capacity as
a member of the Kansas Board of
Regents; DAN LYKINS, in his
official capacity as a member of the
Kansas Board of Regents; JANIE

No. 14-3102
(D.C. No. 2:10-CV-02606-EFM)
(D. Kan.)

PERKINS, in her official capacity as
a member of the Kansas Board of
Regents; BERNADETTE
GRAY-LITTLE, in her official
capacity as Chancellor of the
University of Kansas,

        Defendants - Appellees.

---

### ORDER AND JUDGMENT[*]

---

Before **HOLMES**, **BACHARACH**, and **McHUGH**, Circuit Judges.

---

    Mr. Robert M. Brown was enrolled as a student at the University of
Kansas School of Law until school officials learned of his criminal history.
When they discovered this history, they expelled Mr. Brown from the
school.  He reacted by suing the school, some faculty members, and all of
the state regents, alleging state torts and denial of due process.  The
district court granted summary judgment to the defendants, and we affirm.

---

[*]     The Court has determined that oral argument would not materially
help in deciding the appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R.
34.1(G).  Thus, we have declined to order oral argument.

    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  It may
be cited, however, for its persuasive value consistent with Fed. R. App. P.
32.1(a) and 10th Cir. R. 32.1(A).

## I.    Mr. Brown's Criminal History and Expulsion

When Mr. Brown applied for law school, his application contained a section entitled "Character & Fitness." In this section, applicants were to disclose any criminal history:

> Have you ever been arrested for, charged with, or convicted of a felony, misdemeanor or infraction other than a traffic violation? (include diversions, sealed or expunged records, and juvenile offenses)

> Have you ever been arrested for, charged with, or convicted of a traffic violation involving alcohol or a controlled substance? (include diversions, sealed or expunged records, and juvenile offenses)

> If you answered "yes" to any of these questions, please explain on a separate sheet or electronic attachment submitted with your application and provide the date, nature of the offense or proceeding, name and location of the court or tribunal, and disposition of the matter.

Appellees' App., vol. I at 224. Mr. Brown answered "no" to these questions.

He then certified the truth of his answers, acknowledging that a false answer constituted "sufficient cause for denial of [the] application or dismissal from the School of Law." *Id*. at 224-25, 227.

With certification of the answers, the law school accepted Mr. Brown and he began classes.

Mr. Brown then amended his application to disclose criminal convictions for domestic battery and driving under the influence. The law

- 3 -

school's admissions committee investigated and determined that
Mr. Brown's application would have been rejected if his criminal history
had been known.  With this determination, an associate dean filed an
academic misconduct complaint.  Mr. Brown objected, and a hearing panel
dismissed the complaint on the ground that it did not allege violation of a
particular rule.  Nonetheless, the panel observed that Mr. Brown's
application and certification letter acknowledged that he could be expelled
for falsifying, misrepresenting, or failing to supply required information.

The law school's dean, Ms. Gail Agrawal, sent Mr. Brown a letter,
stating her intent to dismiss him for "falsification, misrepresentation, and
failure to supply complete, accurate and truthful answers to [his]
application for admission to the School of Law." *Id.* at 211.  She detailed
the facts warranting dismissal and stated:  "If you believe that this action
is inappropriate or that there are mitigating factors that I should consider
before dismissing you, then you must provide me with a written response
to this letter by 2:00 p.m. on June 3, 2010." *Id.*  Mr. Brown challenged the
dismissal, demanding a hearing and notice of the charges and requesting a
hearing with the University Judicial Board and a personal meeting with
Dean Agrawal.  Dean Agrawal declined a meeting and the Judicial Board's
chairperson declined to provide a hearing, stating that faculty rules
authorized each college to establish its own admission standards.  The

- 4 -

Dean then notified Mr. Brown that he was dismissed from the law school "based on falsification, misrepresentation and failure to supply the required information to support [his] admission to the School of Law." *Id.* at 144-45.

Mr. Brown sued, and the district court granted summary judgment to the defendants, ruling that the members of the Board of Regents had no personal involvement in Mr. Brown's dismissal, and that the defendants provided due process.[1]

## II.    Standard of Review

We engage in de novo review of the award of summary judgment, applying the standard under Fed. R. Civ. P. 56(a). *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013). In applying this standard, we view the facts in the light most favorable to Mr. Brown, resolving all factual disputes and reasonable inferences in his favor. *Id.* Because Mr. Brown is proceeding pro se, we afford his materials a liberal construction, but do not act as his advocate. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

---

[1]    The district court also held that the state-law claims failed as a matter of law.

## III.   Application of the Standard of Review

Applying this standard, we conclude that the award of summary judgment was proper.

### A.     Members of the Board of Regents

Members of the Board of Regents were entitled to summary judgment.

As the district court recognized, "government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (brackets and internal quotation marks omitted). Mr. Brown testified that his claim against the regents was based purely on their oversight function.  Appellees' App., vol. I at 172.  Based on this testimony, Mr. Brown conceded that he had no evidence that the regents knew about his application or expulsion.  *Id.* at 175-76.  Under these circumstances, the members of the Board of Regents were entitled to summary judgment.

### B.     The Due Process Arguments

We also reject Mr. Brown's due process arguments.

"The Fourteenth Amendment provides that a state shall not 'deprive any person of life, liberty, or property, without due process of law.'" *Lauck v. Campbell Cnty.*, 627 F.3d 805, 811 (10th Cir. 2010) (quoting U.S.

- 6 -

Const. amend. XIV, § 1). Under this amendment, we address two questions. The first is whether a liberty or property interest exists. The second is whether the State provided sufficient procedures. *Id.* In this case, we will assume Mr. Brown had liberty or property interests implicated by his dismissal from the law school. *See Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 84-85 (1978) (assuming without deciding the existence of a liberty or property interest); *Trotter v. Regents of Univ. of N.M.*, 219 F.3d 1179, 1184 (10th Cir. 2000) (same).

The question then becomes the adequacy of the procedures. The district court properly required greater procedural safeguards because the university was considering an action that was disciplinary rather than academic. *See Harris v. Blake*, 798 F.2d 419, 423 (10th Cir. 1986). The procedures satisfied the stringent requirements for disciplinary action.

When a university considers expulsion, it must use procedures accounting for the conflicting interests. *Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1240 (10th Cir. 2001). To consider those interests, we weigh "(1) the private interest that will be affected by the official action, (2) the probable value, if any, of additional or substitute procedural safeguards, and (3) the government's interest, including the fiscal and administrative burden, that the additional or substitute procedural requirements would entail." *Id.* The objective is to ensure balancing of

- 7 -

"[t]he students' interest in unfair or mistaken exclusion from the educational process" and "the school's interest in discipline and order." *Id.* (internal quotation marks omitted).

The risk of unfair expulsion is minimal because Mr. Brown knew what he had done, knew it constituted ground for expulsion, and took various opportunities to urge mitigation.

Mr. Brown argues that the procedures should have had greater formality, citing *Goss v. Lopez*, 419 U.S. 565 (1975). But *Goss* simply noted that severe disciplinary action could require "more formal procedures," not necessarily the equivalent of a trial. *Goss*, 419 U.S. at 584. For our purposes, the issue is whether greater protections would have proved beneficial. Any benefits would have been minimal in light of the undisputed facts.

These facts include Mr. Brown's acknowledgement that he could be expelled for falsifying his application and his notification to the school that he had given false information. The dean relied on this fact, but gave Mr. Brown an opportunity to respond.

Mr. Brown did so, raising procedural objections and requesting a hearing, but failed to address the fact that he had knowingly provided false information. Accordingly, Dean Agrawal ordered expulsion.

- 8 -

In light of these undisputed facts, further procedural safeguards would have added little.  *See Watson*, 242 F.3d at 1241 ("All that is necessary to satisfy due process is that the procedures be tailored, in light of the decision to be made, to the capacities and circumstances of those who are to be heard, to insure that they are given a meaningful opportunity to present their case." (internal quotation marks omitted)).

Elsewhere, Mr. Brown contends that Dean Agrawal was biased.  But, there is no evidence of a link between the dean's alleged bias and the decision to expel Mr. Brown.  The connection is particularly attenuated because a separate body (the admissions committee) concluded that the school would not have allowed admission into the school if the criminal history had been disclosed.

Mr. Brown also relies on the university's failure to follow its own rules and regulations.  The district court rejected this argument, holding that the university's "failure to follow its own regulations does not, by itself, give rise to a constitutional violation."  Appellees' App., vol. IV at 579 (citing *Horowitz*, 435 U.S. at 92 n.8; *Trotter*, 219 F.3d at 1185; *Schuler v. Univ. of Minn.*, 788 F.2d 510, 515 (8th Cir. 1986) (per curiam)).  Mr. Brown argues that the district court erroneously relied on cases involving academic dismissals rather than disciplinary actions.  But, even in the disciplinary context, a school's failure to comply with its own rules

- 9 -

"does not, in itself, constitute a violation of the Fourteenth Amendment." *Hill v. Trs. of Ind. Univ.*, 537 F.2d 248, 252 (7th Cir. 1976). Indeed, "[t]he Due Process Clause . . . does not require the University to follow any specific set of detailed procedures as long as the procedures the University actually follows are basically fair ones . . . ." *Newman v. Burgin*, 930 F.2d 955, 960 (1st Cir. 1991). The procedures afforded to Mr. Brown were fair as a matter of law.

### C.    Mr. Brown's Proffered Factual Disputes

Mr. Brown asserts the district court erred in resolving alleged factual disputes. He first says it was "clear error" for the district court to limit its decision to undisputed facts. Appellant's Br. at 54. This argument is meritless because summary judgment is appropriate only if "'there is *no* genuine dispute as to any material fact.'" *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 762 F.3d 1114, 1118 (10th Cir. 2014) (citing Fed. R. Civ. P. 56(a)) (emphasis added). Of course, the defendants "must identify portions of the record that demonstrate the absence of a genuine issue of material fact," and Mr. Brown was entitled to have the evidence viewed in the light most favorable to him. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998).

Mr. Brown cites 321 factual statements, saying they show material disputes disregarded by the district court. For example, he says that a

factual dispute existed regarding his reasons for not disclosing the criminal cases.  But, Mr. Brown's motivation is irrelevant.  The key consideration is whether Mr. Brown disputes that he knowingly gave false answers in his application.  He does not dispute that fact.

In a related argument, Mr. Brown contends that despite evidence showing material disputes, the district court erred in making the following dispositive factual findings:

- that he lied on his law school application;

- that the defendants' conduct was not "wanton" for purposes of his state-law negligence claim;

- that he had no reasonable expectation of practicing law and could not show intentional misconduct or malice to support his state-law tortious interference claim; and

- that there was no evidence of unlawful overt acts or meeting of the minds to support his state-law civil conspiracy claim.

The first finding involves an uncontested fact, for Mr. Brown does not deny that he intentionally gave false information about his criminal history.

We need not address the other three findings, because Mr. Brown does not challenge the district court's grant of summary judgment on his state-law claims.  Indeed, the state-law claims are not listed in Mr. Brown's statement of the issues in his opening brief.  *See* Aplt. Br. at 3-4.  And apart from an isolated reference in his statement of the case, his

- 11 -

opening brief refers to the state-law claims only in the context of this

factual discussion.  These scattered references are insufficient to preserve

appellate review.  *See Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2

(10th Cir. 1994).

## IV.   Sealed Record Volume

We also have an issue involving the sealing of Volume V of the

defendants' appendix.  The clerk's office directed the parties to file written

responses stating whether Volume V should remain under seal and, if so,

for how long.  We have held:

> A party seeking to file court records under seal must overcome
> a presumption, long supported by courts, that the public has a
> common-law right of access to judicial records.  To do so, the
> parties must articulate a real and substantial interest that
> justifies depriving the public of access to the records that
> inform our decision-making process.

*Eugene S. v. Horizon Blue Cross & Blue Shield of New Jersey*, 663 F.3d

1124, 1135-36 (10th Cir. 2011) (citations and internal quotation marks

omitted).

The defendants have requested that Volume V remain under seal

because it contains redacted information obtained through discovery of

other students who amended their law school applications to disclose

criminal or disciplinary records.  The defendants claim these students have

a strong interest in preventing the disclosure of their personally

identifiable information.  *See generally* Family Educational Rights and

Privacy Act, 20 U.S.C. § 1232g(b)(1).  We agree and conclude that the defendants have shown a substantial interest justifying the continued sealing of Volume V.  Accordingly, Volume V shall remain under seal.

**V.    Disposition**

We affirm and direct the Clerk to continue sealing Volume V of the defendants' appendix.

Entered for the Court


Robert E. Bacharach
Circuit Judge

- 13 -

**UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**
**OFFICE OF THE CLERK**
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

| | | |
|---|---|---|
| Elisabeth A. Shumaker | January 13, 2015 | Chris Wolpert |
| Clerk of Court | | Chief Deputy Clerk |

Mr. Robert M. Brown
6200 West 74th Street
Overland Park, KS 66204

Ms. Sara L. Trower
University of Kansas
Office of General Counsel
245 Strong Hall
1450 Jayhawk Blvd.
Lawrence, KS 66045-7518

**RE:    14-3102, Brown v. University of Kansas, et al**
            Dist/Ag docket: 2:10-CV-02606-EFM

Dear Counsel/Appellant:

Enclosed is a copy of the order and judgment issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Please contact this office if you have questions.

Sincerely,

Elisabeth A. Shumaker
Clerk of the Court

EAS/klp